DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Joann Holland, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying relator's application for accrued permanent total disability compensation on behalf of her husband, Eugene S. Holland, and to find that relator is entitled to accrued permanent total disability compensation from August 28, 1991, the date decedent filed an application for permanent total disability compensation, through July 18, 1996, the date decedent died.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate determined the commission did not abuse its discretion (1) in relying on the medical report of Dr. Hanington, (2) in accepting the reports and testimony from both Drs. Penix and Hanington, who work in the same office, and (3) in rejecting relator's vocational evidence. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's conclusions of law, rearguing those matters adequately addressed in the magistrate's decision.
 {¶ 4} Specifically, as the magistrate noted, even if Dr. Hanington's report does not fully satisfy the requirement that a non-examining physician accept all findings of examining physicians and express an independent opinion based solely on those findings, relator had the opportunity to cross-examine Dr. Hanington during his deposition. In doing so, relator elicited testimony that Dr. Hanington accepted the examining physician's findings as true and rendered his opinion based upon those findings.
 {¶ 5} In addition, the magistrate properly noted that, although Drs. Penix and Hanington are in the same office, thereby arguably violating the impartiality rule in the commission's medical examination manual, the testimony indicated the doctors were employees of Group Health Associates, a specialty group of over 100 physicians. Because the doctors did not discuss the case with each other, the record showed no evidence of bias or partiality, elimination of which is the primary objective of the commission's impartiality rule. In light of the eight-year time span between the report of Dr. Penix and that of Dr. Hanington, the magistrate properly concluded the record fails to show a basis upon which to issue a writ.
 {¶ 6} Finally, as the magistrate properly notes, under State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, "the commission has discretion to accept one vocational report while rejecting another." (Magistrate's Decision, at ¶ 44.) The commission did not abuse its discretion in failing to accept the findings of Dr. Tecklenburg, and the commission had no duty to explain why it did not accept the report. Accordingly, relator's objections are overruled.
 {¶ 7} In addition, General Motors Corporation ("GM") has filed an objection to the magistrate's conclusions of law, contending the magistrate incorrectly failed to address the issue of laches; GM asserts that laches presents and additional basis on which to deny the requested writ of mandamus. Although the issue of laches presents an alternative basis for addressing relator's claims, we have determined those claims do not warrant a writ of mandamus. Thus we need not address whether laches bars relator's claims. Accordingly, GM's objection is overruled.
 {¶ 8} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Brown, P.J., and McGrath, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Joann Holland, Widow-Claimant of :
Eugene S. Holland — Deceased, :
 :
 Relator, :
 :
v. : No. 05AP-49
 :
General Motors Corporation and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 :
 :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 23, 2005 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Stephen P. Gast
and Daryl A.W. Crosthwaite, for relator.
Vorys, Sater, Seymour and Pease, LLP, Joseph A. Brunetto and SebastianE. Proels, for respondent General Motors Corporation.
Jim Petro, Attorney General, and William J. McDonald, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} Relator, Joann Holland, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for accrued permanent total disability ("PTD") compensation on behalf of her husband, Eugene S. Holland ("decedent"), and ordering the commission to find that relator is entitled to accrued PTD compensation from August 28, 1991, the date decedent filed an application for PTD compensation, through July 18, 1996, the date decedent died.
Findings of Fact:
 {¶ 10} 1. Decedent sustained a work-related injury and his claim has been allowed for "lumbar strain, left shoulder strain, broken upper denture, herniated disc at C4-5, C5-6."
 {¶ 11} 2. On August 28, 1991, decedent filed an application for PTD compensation. Decedent's application was supported by the July 11, 1991 report of Dr. David Gillis, who opined that decedent was permanently and totally disabled from any sustained remunerative employment.
 {¶ 12} 3. Decedent was also examined by Dr. Frederick Winston, who issued a report dated January 17, 1989, and opined that decedent's allowed conditions prevented him from engaging in any type of sustained remunerative employment.
 {¶ 13} 4. Decedent was also examined by Dr. Arnold Penix, who issued a report dated December 3, 1991. Dr. Penix opined that decedent had reached maximum medical improvement ("MMI"), assessed a 33 percent whole person impairment, and indicated that decedent could not return to his former position of employment, but could return to sedentary work.
 {¶ 14} 5. An employability assessment was prepared by Dr. Kenneth Tecklenburg, who reported that decedent had a full scale I.Q. of 87, read at the eighth grade level, spelled at the sixth grade level, and performed basic math at the fifth grade level. Dr. Tecklenburg opined that decedent should be considered permanently and totally disabled.
 {¶ 15} 6. Decedent's application for PTD compensation was heard before the commission on September 8, 1992, and his application was denied.
 {¶ 16} 7. Decedent filed a mandamus action in this court and this court vacated the commission's order denying PTD compensation and ordered the commission to issue a new order which complied with the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 17} 8. The commission vacated that order and issued a new order, dated June 10, 1993, again denying decedent's application for PTD compensation.
 {¶ 18} 9. Decedent filed a second action in mandamus in this court and this court again issued a writ directing the commission to vacate its order denying decedent's application for PTD compensation and ordered the commission to issue a new order which considered all the allowed conditions in the claim.
 {¶ 19} 10. On July 18, 1996, decedent died as a result of causes other than those conditions allowed in his claim.
 {¶ 20} 11. On September 5, 1996, relator, decedent's widow, filed an application for payment of PTD compensation which had accrued at the time of decedent's death.
 {¶ 21} 12. By order dated January 14, 1997, the commission found that decedent's PTD application had abated due to his death; however, the commission found that relator's request for accrued compensation at the time of decedent's death was not precluded from consideration on the merits.
 {¶ 22} 13. In the same order, dated January 14, 1997, the commission requested that Dr. Penix submit a supplemental report concerting whether decedent was able to engage in employment activity when considering his left shoulder injury, the allowed condition which was omitted from Dr. Penix's earlier report.
 {¶ 23} 14. Dr. Penix submitted an addendum dated January 27, 1997, indicating that decedent would have had a 15 percent whole person impairment as a result of the allowed shoulder condition. As such, Dr. Penix indicated that decedent had a 42 percent whole person impairment and further that decedent's left shoulder would have decreased his likelihood of employment activity.
 {¶ 24} 15. Respondent General Motors Corporation ("employer") filed a motion to depose Dr. Penix based on the substantial disparity between his January 27, 1997 file review and his November 20, 1991 report.
 {¶ 25} 16. The commission granted the employer's motion and Dr. Penix was deposed on April 28, 1998. (The deposition of Dr. Penix is contained in the record at 37-84.)
 {¶ 26} 17. The hearing administrator requested that the file be reviewed relative to the issue of PTD compensation. On March 26, 1999, Dr. Kenneth Hanington reviewed the relevant medical records and opined that decedent would have been capable of sedentary employment in 1991.
 {¶ 27} 18. Relator filed a motion to depose Dr. Hanington.
 {¶ 28} 19. The commission granted the motion and the deposition took place on August 18, 1999. (The deposition of Dr. Hanington is contained in the record at 5-34.)
 {¶ 29} 20. Relator's application for payment of accrued compensation was heard before a staff hearing officer ("SHO") on November 8, 1999, and resulted in an order denying the request. The SHO relied upon the report of Dr. Hanington and concluded that decedent would have been capable of engaging in sedentary work activity based upon Dr. Hanington's March 19, 1999 report as well as his deposition testimony. Thereafter, the SHO provided the following analysis of the nonmedical disability factors:
The Staff Hearing Officer finds that the claimant was 57 at the time his application was filed on 8/28/91, that the claimant had an 11th grade education, and had previous work experience as a power truck driver and factory worker for General Motors.
The Staff Hearing Officer finds that the claimant's age of 57 at the time of the filing of his application was not a barrier to the claimant engaging in sedentary work activity. The Staff Hearing Officer finds that the claimant had approximately 6 more years of employment history prior to his death on 7/18/96. The Staff Hearing Officer finds that the claimant was classified as a person closely approaching advanced age but that this would not be a barrier to the claimant engaging in sedentary work activity.
The Staff Hearing Officer finds that the claimant had an 11th grade education, had the ability to read, write and do basic math according to his application, and had a full scale I.Q. of 87 based upon testing completed by Dr. Tecklenburg in 1992. Individuals who score in this range are capable of completing a formal high school degree and are able to engage in low semi-skilled and unskilled positions. Testing by Dr. Tecklenburg indicated that the claimant could read at the 8th grade level, spell at the 6th grade level, and do math at the 5th grade level.
Vocational ability indicated that the claimant scored at the low average range in mechanical reasoning, spatial reasoning, numerical ability and word knowledge.
The Staff Hearing Officer finds that the claimant's education would not be a barrier to the claimant engaging in entry level sedentary work activity.
The Staff Hearing Officer finds that the claimant's past work experience would not be a barrier to the claimant engaging in sedentary work activity although the claimant's job at the time of injury was as a power truck driver and laborer at General Motors. The claimant also had worked for approximately 15 years prior to his last day worked in 1986 as a union committee man which was an elected position. This job required the claimant to answer calls from union members, consult with and investigate employee complaints regarding union matters and make decisions in disputes between union employees and management. The claimant would also represent individual employees in grievance procedures and the claimant represented employees through different steps of the grievance procedure and engaged in settlement negotiations to settle grievances.
The Staff Hearing Officer finds that this job as a union committee man provided the claimant with a number of skills including the ability to investigate and assemble facts, engage in a decision making process based upon facts obtained and present decisions in a coherent manner based upon facts obtained. This job also required the claimant to have a working understanding of the grievance procedure and be able to impart this knowledge to different employees. This job also required the claimant to have negotiation skills in order to settle disputes between the union members and management. The job also required the claimant to represent members at labor relation hearings.
The Staff Hearing Officer finds that these skills which the claimant acquired indicate a level of academic ability which would be beneficial to the claimant engaging in sedentary work activity. The Staff Hearing Officer finds that the claimant had the ability to obtain facts from different sources, assimilate those facts and be able to use those facts in arriving at a decision. The Staff Hearing Officer further finds that the claimant had the ability then to take the decision made and communicate this decision in a clear and coherent manner. The Staff Hearing Officer finds that these skills would be of benefit to the claimant engaging in other sedentary work activity.
Therefore, based upon the above stated reasons the Staff Hearing Officer finds that the claimant would not have been likely to have been awarded Permanent and Total Disability Benefits and was not permanently and totally disabled as of the date of the claimant's Permanent and Total Disability Application which was filed on 8/28/91. Therefore, the widow-claimant's C-6 motion filed 9/5/96 is denied.
 {¶ 30} 21. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 32} Relator's application for accrued PTD compensation as of the date of decedent's death is reviewed under the same analysis ordinarily applied to review of commission orders relating to awards of PTD compensation in general.
 {¶ 33} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. Noll, supra.
 {¶ 34} Relator asserts that the commission abused its discretion in the following ways: (1) the commission abused its discretion by relying upon the medical report of Dr. Hanington who did not expressly accept the findings of the examining physicians; (2) the commission abused its discretion by violating the impartiality rules and accepting reports and testimony from both Drs. Penix and Hanington, who work in the same office; and (3) the commission abused its discretion by rejecting relator's vocational evidence. For the reasons that follow, this magistrate rejects relator's arguments.
 {¶ 35} Relator's first argument is that the commission abused its discretion by relying upon the report of Dr. Hanington who, relator argues, did not accept all the allowed conditions. It is undisputed that a nonexamining physician's opinion may constitute some evidence upon which the commission can rely. Citing State ex rel. Wallace v. Indus.Comm. (1979), 57 Ohio St.2d 55. However, the nonexamining physician is required to accept all findings of the examining physicians and must express an independent opinion based solely upon those findings.
 {¶ 36} In his March 19, 1999 report, Dr. Hanington noted and discussed various medical reports in the record including reports by Drs. Gillis, Shahbabian, McTighe, Siegel, Penix, and a psychiatric evaluation which referenced the removal of a brain tumor. Although Dr. Hanington noted the findings of each of the doctors whose reports he listed, Dr. Hanington did not specifically indicate that he had expressly accepted all of the findings. However, in his deposition testimony, the following exchange took place between relator's counsel and Dr. Hanington:
Q. * * * Did you take all the findings and consider all of them and then render your opinion or did you specifically look at one physical examination and rely upon that?
A. No. Basically, all the findings is a gestalt of his progress from the date of his injury on forward. Basically, I went through the industrial record sequentially, page by page, and looked at reports and rendered the motions and findings and any operative reports, x-rays, MRIs, CT scans.
Q. Any objective findings contained in any of the reports, you would have specifically considered them?
A. Yes.
Q. Would you have accepted them to be accurate?
A. Yes.
Q. The next part I want to ask you about, what about the subjective complaints of the claimant in each case? Did you review each report regarding that?
A. Yes.
* * *
Q. Were his complaints in the areas set forth on the allowed conditions consistent with what you considered the allowed conditions? Did that make sense to you? * * *
A. Yes
Q. Were his complaints consistent with the allowed conditions?
A. They seemed to be consistent with the allowed conditions.
(Dr. Hanington's deposition at 10-11.)
 {¶ 37} Based upon the answers provided by Dr. Hanington, this magistrate concludes that, in spite of the fact that Dr. Hanington did not expressly adopt the findings of the various doctors in his report, it is clear, from his deposition testimony, that he accepted those findings as true and rendered his opinion based upon his acceptance of those findings. In State ex rel. Hughes v. Goodyear Tire Rubber Co. (1986),26 Ohio St.3d 71, 74, the Supreme Court of Ohio specifically stated as follows:
* * * [O]ur opinions should not provide the basis for usurping the role of the commission in determining disability by creating arbitrary exclusionary rules that eliminate evidence the commission might find credible because such evidence fails to include "magic words" to conform with hypertechnical evidentiary rules, e.g., "I expressly adopt the findings but not the opinion of Dr. `X.'" * * *
 {¶ 38} Because Dr. Hanington was deposed and testified that he accepted the findings of the doctors and because the commission specifically stated, in its order, that it relied upon his deposition testimony, the magistrate finds that relator has not demonstrated that the commission abused its discretion. Instead, the record reflects that Dr. Hanington did accept the findings of the various doctors when he, a nonexamining physician, issued his report. As such, this argument of relator fails.
 {¶ 39} Relator next challenges the commission's order asserting that the commission violated its own impartiality rules. The commission's medical examination manual provides, in pertinent part, as follows:
Examinations are to be performed by physicians and psychologists who hold no bias with respect to the claimant, the employer or the workers' compensation system. Physicians and psychologists are excluded from performing specialist examinations:
* * *
Whose professional practice partner/business associate has examined or treated the claimant for the employer, the claimant, or the Bureau.
 {¶ 40} Relator argues that Dr. Hanington was somehow biased because Dr. Penix, who is with the same office as Dr. Hanington, had previously examined decedent and opined that he would likely be unemployable. However, in his deposition testimony, Dr. Hanington was specifically asked the following questions and provided the following relevant answers:
Q. * * * And one of the reports that I assume you reviewed, based on a reading of your report, is you reviewed the report of Dr. Penix; is that right?
A. Correct.
Q. Is Dr. Penix — what's his relationship? Are you in the same office, partners? Just briefly.
A. We are both employees of Group Health Associates, large volume specialty group here in town with over 100 physicians.
Q. Did you have any personal discussions with him after reviewing this file or at any time concerning this case?
A. No.
Q. So your sole knowledge that you obtained from Dr. Penix would be based on your review of his report?
A. Correct.
(Dr. Hanington's deposition at 5-6.)
 {¶ 41} Based upon his deposition testimony, there was no evidence of bias or partiality shown by Dr. Hanington.
 {¶ 42} Clearly, in a small group of practice, one would want to avoid having partners reviewing each others' reports as one could expect that the doctors would render opinions biased in favor of each other. The commission has the right to interpret its own manual and could find no bias here which would require the removal of Dr. Hanington's report from consideration. As Dr. Hanington testified, he is part of a group consisting of over 100 physicians and he did not have any discussions with Dr. Penix about his report. The evidence simply does not show any bias or prejudice. Further, there was an eight year time span between the rendering of the report of Dr. Penix and the report of Dr. Hanington. The magistrate finds no violation of the commission's policy and no reason why this association should preclude the commission from considering and relying upon Dr. Hanington's report. Furthermore, relator failed to raise this issue administratively and it cannot be raised now in a mandamus action. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78.
 {¶ 43} Lastly, relator contends the commission abused its discretion by rejecting the vocational evidence of Dr. Tecklenburg. Based upon his consideration of the medical and nonmedical factors, Dr. Tecklenburg had concluded that decedent was permanently and totally disabled.
 {¶ 44} Pursuant to State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, the commission has discretion to accept one vocational report while rejecting another. To bind the commission to a vocational report's conclusions makes the vocational evaluator, and not the commission, the ultimate evaluator of disability contrary to Stephenson,
supra. See State ex rel. Singleton v. Indus. Comm. (1994),71 Ohio St.3d 117. Furthermore, the commission can reject all vocational reports and conduct its own analysis of the nonmedical factors. Jackson.
 {¶ 45} In the present case, the commission was not required to accept the findings of Dr. Tecklenburg and the commission has no duty to explain why it did not. Instead, the commission provided its own analysis which this magistrate finds meets the requirements of Noll and its progeny. As such, this argument of relator lacks merit as well.
 {¶ 46} Based on the foregoing, the magistrate finds that relator has not demonstrated that the commission abused its discretion by denying her application for accrued PTD benefits relative to the work-related injury sustained by decedent and relator's request for a writ of mandamus should be denied.